## Ferguson's Estate.

*Wills—Gift to charity—Direction to accumulate—Assignment of fund by the charity—Act of April 18, 1853.*

1. Where a charity takes a vested property right in a legacy which the testator has directed to be accumulated for its benefit, the charity may sell, assign or dispose of such benefit in any way it thinks to its advantage.

2. Where a will sets up a single trust for decedent's two daughters and authorizes the division of the securities and the creation of two separate trusts, one for each, at his daughters' request, and such division was made, said trusts being for life with gifts over of annuities to the children of each daughter and ultimate gifts over of the principal to charities, a direction that any income of a deceased daughter's share in excess of the sums required to pay the annuities to the grandchildren shall be held by the trustees as "part of the principal of my whole residuary estate," must be read as meaning the whole residuary estate as represented in each half; hence, the accumulations of income of such deceased daughter's share, after the death of such daughter, will go to the charities and not to the surviving daughter, and there is no violation of the Act of April 18, 1853, P. L. 503.

3. After the division of the securities, there were two separate trusts, one for each daughter; hence, the income from her securities continues for the life of the survivor after the death of her sister.

Exceptions to adjudication. O. C. Phila. Co., July T., 1907, No. 199.

HENDERSON, J., Auditing Judge.—By his will the decedent set up a trust for his two daughters and directed that it could be separated into two trusts, at his daughters' request. [This was done.] This account is of the fund held for Esther F. Mears.

The testator had given each daughter $9000 per annum, subject to the upkeep of a cottage at Cape May, and then provided for an accumulation of any surplus income to be used to assure these payments. This court held that the surplus income belonged equally to the two daughters, but it was not definitely determined as to whether their title was by way of an implied gift or by virtue of a partial intestacy. Upon appeal, the action of this court was affirmed. [Ferguson's Estate, 223 Pa. 530.]

Mrs. Mears left to survive her two children, Frances M. Estes and Bryant F. Mears, and no issue of deceased children.

Upon the death of a daughter leaving issue, the testator provided as follows:

"And upon this further trust upon the death of each one of my said daughters whether before me or after me who shall leave children who were living at the time of my death to pay during life to each one of such children if any who shall have attained the age of twenty-one years at the time of his or her mother's death—entirely, however, out of the income of that half of my residuary estate held in trust for such daughter during life a yearly sum to be ascertained by dividing the whole income of that one half of my said residuary estate into as many shares as there may be such children not however in any event to exceed the yearly sum of Four Thousand Dollars—to each such child; and to hold the remainder of the income of the said one-half of my said residuary estate in trust to pay to the Guardians of each one of such children as may be minors such part of the said sum ascertained as above mentioned as any Court of competent jurisdiction may from time to time decree to be necessary for his or her maintenance and support until each one of such minors shall attain the age of twenty-one years upon arriving at which age each one of said children shall thereafter be paid yearly during his or her life the full amount of the said yearly sum so ascertained as above mentioned not however to exceed Four Thousand Dollars.—And if after

Ferguson's Estate.

paying all the said sums and parts of sums there should be any surplus of income I direct my said Executors and Trustees to hold such surplus income as part of the principal of my whole residuary estate. . . ."

Both of said children are of age, and, as they are limited to $4000 per annum, the question arises as to what shall be done with the surplus income? The will directs it shall be held as a part of "my whole residuary estate;" that is, it shall be accumulated, and after the deaths of his children and grandchildren he gives the *corpus* of the estate and "undivided" income to two charities. By "undivided" income he undoubtedly meant such as he had directed to be accumulated. It is conceded that such accumulations for charities would be legal; but it is contended that they may be used to assure the two annuities of $4000, and that some of them may pass to Frances, who, by codicil, was given a power of appointment as to the principal of her trust fund, and, as accumulations for these purposes are void, an intestacy of this surplus should be declared. This clause of the will, the one now operative, does not give these accumulations to assure the annuities, but directs them to be held as part of the "whole residuary estate" which eventually goes to charitable purposes. Furthermore, these annuities are payable "entirely however out of the income of that half of my residuary estate held in trust for such daughter during life. . . ."

It is argued that, as these accumulations are to be held as part of the "whole residuary estate," half of them must pass to the trust for Frances, and, as she has a power of appointment, the accumulation is void because she may appoint to other than a charity. The expression "whole residuary estate" gives rise to some confusion.

When we remember, however, that the will sets up a single trust, and that this trust was separated into two by virtue of the power given to the daughters, the language becomes plainer. The division was effected by the direction of the testator, and thereafter each of the two trusts stood on its own feet. The phrase "whole residuary estate" must be read as meaning whole residuary estate as represented in each half.

I have reached the conclusion that the surplus accumulations of income from time to time shall be set aside and made a part of the *corpus* of the trust, but, in order that none of them may by any chance reach any of the individuals, the trustees are directed to keep a separate account thereof, and by this I do not mean to establish a separate trust fund.

The *corpus* of this trust will be awarded to the accountants and out of the income thereof they will pay (1) to Frances the sum of $600 per annum; (2) one-half of the upkeep, etc., of the Cape May property as provided in the will; (3) the annuities of $4000 each to Frances M. Estes and Bryant F. Mears, the children of Esther F. Mears; (4) the premiums on the two policies of life insurance as directed in clause 5 of the will; and (5) the surplus, after all proper charges, to be invested and accumulated during the lives of Frances M. Estes and Bryant F. Mears. . . .

Mr. Phillips, representing Joseph F. Collins, assignee of the New England Anti-Vivisection Society, presented the assignment under which he claims, a copy of which is hereto annexed. Nothing will be distributed at the present time to, or on account of, the legacy of the New England Anti-Vivisection Society. It is contended by Mr. Ryan that any accumulation for this society will be void because it has been assigned to an individual for whom accumulations are forbidden, and, hence, the accumulations due this charity should be awarded to the heirs. The accumulation directed by the will is for a charity and, hence, allowable. In the absence of any prohibition, the charity may sell

and assign its legacy and any accumulations, and, hence, I decline to award the accumulations to the heirs.

*James Francis Ryan*, for Bryant F. Mears, exceptant.

*C. Russell Phillips* and *Owen J. Roberts*, for Frances Ferguson, contra.

*C. Russell Phillips* and *Martin Conboy* (of the New York Bar), for Joseph F. Collins, contra.

VAN DUSEN, J., June 13, 1927.—We all think that the Auditing Judge was correct in his construction of the will and that he has adequately given the reasons for it.

We will add a word upon the novel point made against the accumulation of income for charity. It was that the charity had sold and assigned its interest, and as the accumulation was no longer for the benefit of the charity, it was void: Act of April 18, 1853, § 9, P. L. 503.

Upon decedent's death the charity got a vested property right. What is done with it—whether the period of distribution is awaited, or the future payments are commuted by a lump sum payment, or by a sale—is no longer a matter of concern. The charity gets the benefit, and can dispose of that benefit in any way it thinks to advantage. It is in no sense a personal privilege, which cannot be assigned, nor in violation of a special trust. If it was, the result of an attempted assignment would not be to forfeit the interest of the charity but to make the assignment ineffective, and the assignee would take nothing.

The exceptions are dismissed, and the adjudication is confirmed absolutely.